IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| TIMOTHY MALOCHE, | ) | CASE NO. 22CV007994 |
| | ) | |
| Plaintiff, | ) | JUDGE RICHARD FRYE |
| | ) | |
| v. | ) | **FIRST AMENDED** |
| | ) | **COMPLAINT FOR DAMAGES** |
| NISOURCE CORPORATE SERVICES | ) | **AND INJUNCTIVE RELIEF** |
| COMPANY, *et al*, | ) | |
| | ) | **JURY DEMAND ENDORSED** |
| Defendants. | ) | **HEREIN** |
| | ) | |

Plaintiff, Timothy Maloche, by and through undersigned counsel, as his First Amended Complaint against Defendant NiSource Corporate Services Company ("NiSource"), William Grimes, Anne-Marie D'Angelo, and Stanley Sagun, states and avers the following:

### PARTIES, VENUE, & JURISDICTION

1. Maloche is a resident of Porter Township, Delaware County, Ohio.

2. NiSource is a foreign corporation that does business at 290 W Nationwide Boulevard, Columbus, Franklin County, Ohio 43215.

3. NiSource is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

4. Grimes is a resident of the state of Indiana.

5. Grimes was Vice President and Deputy General Counsel for NiSource.

6. D'Angelo is a resident of the state of Illinois.

7. D'Angelo was Executive Vice President for NiSource.

8. Sagun is a resident of the state of Ohio.

9. Sagun was Senior Vice President and Deputy General Counsel for NiSource.

10. All of the material events alleged in this Complaint occurred in Franklin County, Ohio.



11. Personal jurisdiction is proper over NiSource pursuant to R.C. § 2307.382(A)(1) and (4).

12. Venue is proper pursuant to Civ. R. 3(C)(3) and (6).

13. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

14. On or about November 17, 2021, Maloche filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC"), Charge No. COLE1(49141)11172021;22A-2022-00543F against NiSource ("Maloche EEOC Charge").

15. On or about August 11, 2022, the OCRC issued a Notice of Right to Sue letter to Maloche regarding the Maloche OCRC Charge.

16. Under R.C. § 4112.052(C)(2)(b), the statute of limitations for Maloche's claims under R.C. § 4112.01 *et seq.* was tolled while the Maloche OCRC Charge was pending in the OCRC.

17. On or about October 27, 2022, Maloche filed Charges of Discrimination against D'Angelo and Grimes in the OCRC.

18. On or about November 16, 2022, Maloche filed a Charge of Discrimination against Sagun in the OCRC.

19. The allegations in Maloche's Charges of Discrimination against D'Angelo, Grimes, and Sagun were closely related to the allegations in the Maloche OCRC Charge.

20. On or about February 2, 2023, Maloche requested the Right to Sue letters from the OCRC for his charges against D'Angelo, Grimes, and Sagun.

21. Maloche has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

22. Maloche has properly exhausted his administrative remedies pursuant to R.C. § 4112.052.

2



## FACTS

23. On or about May 18, 2009, Maloche began working for NiSource.

24. NiSource employed Maloche as senior counsel.

25. Maloche is 56 years old.

26. At all times herein, Maloche was over age 40.

27. In or about February 2019, Maloche learned that Bill Grimes was sexually harassing a paralegal, Sarah Gasienica ("Harassment of Gasienica").

28. Among the Harassment of Gasienica, Grimes sent pornographic images to Gasienica.

29. Among the Harassment of Gasienica, Grimes subjected Gasienica to unwelcome touching.

30. Among the Harassment of Gasienica, Grimes sent lewd text messages to Gasienica.

31. The Harassment of Gasienica was unwelcome to Gasienica.

32. Maloche reasonably believed that the Harassment of Gasienica was unwelcome to Gasienica.

33. In or about February 2019, Maloche reported the Harassment of Gasienica to Jenny Higgins.

34. Higgins was employment counsel for NiSource.

35. In or about February 2019, Maloche reported the Harassment of Gasienica to Angela Irons.

36. Irons was a senior human resources consultant for NiSource.

37. In or about May 2019, Maloche filed a report of the Harassment of Gasienica with NiSource's ethics department.

38. NiSource has a policy against sexual harassment ("Sexual Harassment Policy").

39. NiSource's Sexual Harassment Policy precludes retaliation against employees who complain about sexual harassment.

40. Alternatively, retaliation against employees who complain about sexual harassment is permitted by NiSource.

3



Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Feb 03 11:49 AM-22CV007094
0G252 - S1
Case: 2:23-cv-00476-MRB Doc #: 8 Filed: 07/28/23 Page: 4 of 31 PAGEID #: 279

41. NiSource's Sexual Harassment Policy precludes intimidation against employees who complain about sexual harassment.

42. Alternatively, intimidation against employees who complain about sexual harassment is permitted by NiSource.

43. NiSource's Sexual Harassment Policy requires employees to report what they reasonably believe is a violation of the Sexual Harassment Policy.

44. NiSource's Sexual Harassment Policy precludes retaliation against employees who report a violation of the Sexual Harassment Policy.

45. Alternatively, retaliation against employees who report a violation of the Sexual Harassment Policy is permitted by NiSource.

46. NiSource's Sexual Harassment Policy precludes intimidation against employees who report a violation of the Sexual Harassment Policy.

47. Alternatively, intimidation against employees who report a violation of the Sexual Harassment Policy is permitted by NiSource.

48. The Harassment of Gasienica violates the Sexual Harassment Policy.

49. NiSource has a policy to investigate reports of violations of its Sexual Harassment Policy.

50. An investigation should include interviewing the complainant.

51. An investigation should include interviewing the subject of the complaint.

52. An investigation should include interviewing the subject of the reported discrimination.

53. An investigation should include interviewing witnesses to the reported discrimination.

54. An investigation should include getting a written statement from the complainant.

55. An investigation should include getting a written statement from the subject of the complaint.

4



Case: 2:23-cv-00476-MRB Doc #: 8 Filed: 07/28/23 Page: 20 of 79 PAGEID #: 994

56. An investigation should include getting a written statement from the subject of the reported discrimination.

57. In response to Maloche's reports of the Harassment of Gasienica, NiSource did not give Grimes a written warning.

58. In response to Maloche's reports of the Harassment of Gasienica, NiSource did not give Grimes a final warning.

59. In response to Maloche's reports of the Harassment of Gasienica, NiSource did not give Grimes a demotion.

60. In response to Maloche's reports of the Harassment of Gasienica, NiSource did not give Grimes a suspension.

61. In response to Maloche's reports of the Harassment of Gasienica, NiSource did not terminate Grimes's employment.

62. In or about August 2019, NiSource placed Maloche on involuntary leave ("Suspension").

63. The Suspension was an adverse employment action.

64. The Suspension was an adverse action.

65. The Suspension would dissuade a reasonable person from reporting sexual harassment.

66. NiSource gave Maloche the Suspension intentionally.

67. NiSource gave Maloche the Suspension willfully.

68. In or about August 2019, Irons told Maloche about the Suspension.

69. In or about August 2019, Irons told Maloche that the reason for the Suspension was that Maloche said something that made paralegals uncomfortable ("Stated Reason for Suspension").

70. Irons did not tell Maloche what he allegedly said to make paralegals uncomfortable.

5



Franklin County Ohio Clerk of Courts of the Common Pleas- 2022 Feb 03 11:49 AM-22CV000794
0G252 - S3
Case: 2:23-cv-00476-MRB Doc #: 8 Filed: 07/28/23 Page: 26 of 79 PAGEID #: 2094

71. No one at NiSource told Maloche what he allegedly said to make paralegals uncomfortable.

72. NiSource did not interview Maloche about his alleged misconduct.

73. NiSource did not get a written statement from Maloche about his alleged misconduct.

74. NiSource did not interview witnesses to Maloche's alleged misconduct.

75. NiSource did not get written statements from witnesses to Maloche's alleged misconduct.

76. NiSource gave Maloche the Suspension in retaliation for his reports of the Harassment of Gasienica.

77. During the Suspension, Maloche learned from coworkers that there was a rumor in the office that Maloche was mentally ill.

78. During the Suspension, Maloche learned from coworkers that there was a rumor in the office that Maloche was a danger to himself and others.

79. Grimes created the rumor that Maloche was mentally ill.

80. Grimes created the rumor that Maloche was a danger to himself and others.

81. Grimes created the rumors about Maloche maliciously.

82. Sagun created the rumor that Maloche was mentally ill.

83. Sagun created the rumor that Maloche was a danger to himself and others.

84. Sagun created the rumors about Maloche maliciously.

85. The rumors about Maloche caused Maloche emotional distress.

86. Defendants knew that the rumors about Maloche were false.

87. Defendants spread rumors about Maloche with the expectation that Maloche would learn about the rumors.

88. Defendants spread rumors about Maloche in retaliation for his reports of the Harassment of Gasienica.

6



Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Feb 03 11:49 AM-22CV002794
Case: 2:23-cv-00476-MRB Doc #: 8 Filed: 07/19/23 Page: 72 of 318 PAGEID #: 79
0G252 - S4

89. Defendants spread rumors about Maloche for the purpose of causing him emotional distress.

90. NiSource required Maloche to take a "fitness for duty" exam in order to return to work.

91. D'Angelo was involved in the decision to require Maloche to take a fitness for duty exam.

92. NiSource does not require all employees to take a fitness for duty exam before returning to work.

93. Defendants required Maloche to take a fitness for duty exam because of the rumors about his mental health.

94. The fitness for duty exam caused Maloche emotional distress.

95. Defendants required Maloche to take a fitness for duty exam in retaliation for his reports of the Harassment of Gasienica.

96. Defendants required Maloche to take a fitness for duty exam for the purpose of causing him emotional distress.

97. On or about December 19, 2019, Maloche returned to work.

98. On or about December 19, 2019, D'Angelo told Maloche that he "talked too much" and needed to stop as a condition of returning to work.

99. When D'Angelo told Maloche that he "talked too much," she was referring to the Maloche's reports of the Harassment of Gasienica.

100. D'Angelo told Maloche that he "talked too much" for the purpose of dissuading him from making further reports of discrimination.

101. D'Angelo intended for Maloche to interpret her comment that he "talked too much" as a threat that Defendants would take further adverse actions against him if he made further reports of discrimination and/or harassment.

7



102. D'Angelo's comment that Maloche "talked too much" would dissuade a reasonable person from making reports of discrimination and/or harassment.

103. On or about January 29, 2020, Grimes gave Maloche a performance review ("2020 Review").

104. In the 2020 Review, Grimes gave Maloche a rating of "Needs Improvement."

105. Prior to Maloche's reporting of the Harassment of Gasienica, all of Maloche's annual reviews were "Meets Expectations" or higher.

106. Grimes gave Maloche the 2020 Review less than two months after D'Angelo told Grimes that he "talked too much."

107. The 2020 Review was an adverse action.

108. The 2020 Review would dissuade a reasonable person from reporting sexual harassment.

109. Grimes gave Maloche a negative review in retaliation for Maloche's reporting of the Harassment of Gasienica.

110. Grimes gave Maloche a negative review intentionally.

111. Grimes gave Maloche a negative review willfully.

112. In or about January 2020, Maloche reported to D'Angelo that he believed the 2020 Review was retaliatory based on his reports of the Harassment of Gasienica ("Report of Retaliation").

113. In response to the Report of Retaliation, D'Angelo responded, "That's what you get."

114. In response to the Report of Retaliation, NiSource did not interview Maloche.

115. In response to the Report of Retaliation, NiSource did not interview Grimes.

116. In response to the Report of Retaliation, NiSource did not interview witnesses.

117. In response to the Report of Retaliation, NiSource did not get a written statement from Maloche.



Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Feb 03 11:49 AM-22CV002794
0G252 - S6
Case: 2:23-cv-00476-MRB Doc #: 8 Filed: 07/28/23 Page: 22 of 75 PAGEID #: 2795

118. In response to the Report of Retaliation, NiSource did not get a written statement from Grimes.

119. In response to the Report of Retaliation, NiSource did not get a written statement from witnesses.

120. NiSource did not investigate the Report of Retaliation.

121. In response to the Report of Retaliation, NiSource did not give Grimes a verbal warning.

122. In response to the Report of Retaliation, NiSource did not give Grimes a written warning.

123. In response to the Report of Retaliation, NiSource did not give Grimes a final warning.

124. In response to the Report of Retaliation, NiSource did not give Grimes a demotion.

125. In response to the Report of Retaliation, NiSource did not give Grimes a suspension.

126. In response to the Report of Retaliation, NiSource did not terminate Grimes's employment.

127. In response to the Report of Retaliation, NiSource did not discipline Grimes at all.

128. In or about December 2020, Maloche applied for a promotion to assistant general counsel.

129. In or about December 2020, Maloche was qualified for the position of assistant general counsel.

130. In or about December 2020, NiSource chose not to promote Maloche to the position of assistant general counsel ("Denial of Promotion").

131. Grimes was involved in the decision to give Maloche the Denial of Promotion.

132. D'Angelo was involved in the decision to give Maloche the Denial of Promotion.

133. In or about December 2020, Maloche was 55 years old.

134. In or about December 2020, NiSource promoted Jordan Williams to the position of assistant general counsel.

135. Williams is under age 50.

9



136. Williams is substantially younger than Maloche.

137. In or about December 2020, NiSource promoted an employee who was substantially younger than Maloche to the position of assistant general counsel.

138. In or about December 2020, NiSource promoted an employee under age 50 to the position of assistant general counsel.

139. The Denial of Promotion was an adverse employment action.

140. The Denial of Promotion was an adverse action.

141. NiSource did the Denial of Promotion intentionally.

142. NiSource did the Denial of Promotion willfully.

143. NiSource did the Denial of Promotion in retaliation for Maloche's reports of the Harassment of Gasienica.

144. NiSource did the Denial of Promotion in retaliation for Maloche's reports of retaliation.

145. NiSource did the Denial of Promotion because of Maloche's age.

146. In or about January 2021, Grimes gave Maloche a performance review ("2021 Review").

147. In the 2021 Review, Grimes gave Maloche a rating of "Needs Improvement."

148. The 2021 Review was an adverse action.

149. The 2021 Review would dissuade a reasonable person from reporting sexual harassment.

150. Grimes gave Maloche a negative review in retaliation for Maloche's reporting of the Harassment of Gasienica.

151. Grimes gave Maloche a negative review intentionally.

152. Grimes gave Maloche a negative review willfully.

153. In or about 2021, NiSource offered employees a voluntary separation program ("VSP").

154. In the VSP, NiSource paid employees to resign.

10



155. NiSource offered employees the VSP in order to reduce its workforce.

156. In or about June 2021, NiSource granted a VSP to Ken Keener.

157. Keener was vice president of human resources for NiSource.

158. In or about June 2021, Maloche requested a VSP.

159. In or about June 2021, NiSource denied Maloche's request for a VSP ("Denial of VSP").

160. The Denial of VSP would deter a reasonable person from reporting discrimination and/or harassment.

161. The Denial of VSP was an adverse employment action.

162. The Denial of VSP was an adverse action.

163. NiSource did the Denial of VSP intentionally.

164. NiSource did the Denial of VSP willfully.

165. NiSource did the Denial of VSP in retaliation for Maloche's reports of the Harassment of Gasienica.

166. NiSource did the Denial of VSP in retaliation for Maloche's reports of retaliation.

167. On or about September 24, 2021, Maloche reasonably believed that his termination was imminent.

168. On or about September 24, 2021, a reasonable person in Maloche's position would have felt compelled to resign.

169. On or about September 24, 2021, NiSource constructively discharged Maloche ("Constructive Discharge").

170. NiSource intentionally gave Maloche the Constructive Discharge.

171. NiSource willfully gave Maloche the Constructive Discharge.

172. The Constructive Discharge was an adverse employment action.

11



173. The Constructive Discharge was an adverse action.

174. NiSource replaced Maloche with an employee significantly younger than Maloche.

175. NiSource replaced Maloche with an employee under age 40.

176. NiSource knowingly took an adverse employment action against Maloche.

177. NiSource knowingly took an adverse action against Maloche.

178. NiSource intentionally constructively discharged Maloche.

179. NiSource intentionally took an adverse employment action against Maloche.

180. NiSource intentionally took an adverse action against Maloche.

181. NiSource willfully took an adverse employment action against Maloche.

182. NiSource willfully took an adverse action against Maloche.

183. NiSource constructively discharged Maloche in retaliation for his opposing sexual harassment.

184. NiSource constructively discharged Maloche in retaliation for his opposing retaliation.

185. NiSource constructively discharged Maloche because of his age.

186. As a direct and proximate result of NiSource's conduct, Maloche suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

**(Defendant NiSource)**

187. Maloche restates each and every prior paragraph of this complaint, as if it were fully restated herein.

188. Maloche is 56 years old.

189. At all times relevant, Maloche was a member of a statutorily-protected class under R.C. § 4112.14(B).

12



Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Feb 03 11:49 AM-22CV007994
0G252 - S10
Case: 2:23-cv-00476-MRB Doc #: 3 Filed: 07/28/23 Page: 13 of 18 PAGEID #: 94

190. NiSource treated Maloche differently from other similarly-situated employees based on his age.

191. After constructively discharging Maloche, NiSource replaced Maloche with a person who was significantly younger and/or not belonging to the protected class under R.C. § 4112.14(B).

192. NiSource violated R.C. § 4112.01 *et seq.* by discriminating against Maloche based on his age.

193. As a direct and proximate result of NiSource's conduct, Maloche suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT II: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

### (All Defendants)

194. Maloche restates each and every prior paragraph of this complaint, as if it were fully restated herein.

195. As a result of NiSource's discriminatory conduct described above, Maloche complained about the sexual harassment he witnessed.

196. As a result of NiSource's discriminatory conduct described above, Maloche complained about the retaliation he was facing.

197. Subsequent to Maloche's reporting of sexual harassment to NiSource, NiSource gave Maloche the Suspension.

198. Subsequent to Maloche's reporting of sexual harassment to NiSource, D'Angelo told Maloche that he "talked too much."

199. Subsequent to Maloche's reporting of sexual harassment to NiSource, NiSource gave Maloche the 2020 Review.

13



Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Feb 03 18:49 AM-22CV000794
0G252 - S11
Case: 2:23-cv-00476-MHW-CMV Doc #: 8 Filed: 07/28/23 Page: 14 of 18 PAGEID #: 94

200. Subsequent to Maloche's reporting of sexual harassment to NiSource, NiSource gave Maloche the 2021 Review.

201. Subsequent to Maloche's reporting of sexual harassment to NiSource, NiSource gave Maloche the Denial of Promotion.

202. Subsequent to Maloche's reporting of sexual harassment to NiSource, NiSource gave Maloche the Denial of VSP.

203. Subsequent to Maloche's reporting of sexual harassment to NiSource, NiSource gave Maloche the Constructive Discharge.

204. NiSource's actions were retaliatory in nature based on Maloche's opposition to the unlawful discriminatory conduct.

205. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

206. As a direct and proximate result of NiSource's conduct, Maloche suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT III: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

**(Defendants Grimes, D'Angelo, and Sagun)**

207. Maloche restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

208. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

14



209. Defendants aided, abetted, incited, coerced, and/or compelled NiSource's discriminatory constructive discharge of Maloche.

210. Defendants aided, abetted, incited, coerced, and/or compelled NiSource's discriminatory treatment of Maloche.

211. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

212. As a direct and proximate result of Defendants' conduct, Maloche has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (All Defendants)

213. Maloche restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

214. Grimes created the rumor that Maloche was mentally ill.

215. Grimes created the rumor that Maloche was a danger to himself and others.

216. Grimes created the rumors about Maloche maliciously.

217. Sagun created the rumor that Maloche was mentally ill.

218. Sagun created the rumor that Maloche was a danger to himself and others.

219. Sagun created the rumors about Maloche maliciously.

220. The rumors about Maloche caused Maloche emotional distress.

221. Defendants knew that the rumors about Maloche were false.

222. Defendants spread rumors about Maloche with the expectation that Maloche would learn about the rumors.

15



223. Defendants spread rumors about Maloche in retaliation for his reports of the Harassment of Gasienica.

224. Defendants spread rumors about Maloche for the purpose of causing him emotional distress.

225. NiSource required Maloche to take a "fitness for duty" exam in order to return to work.

226. D'Angelo was involved in the decision to require Maloche to take a fitness for duty exam.

227. NiSource does not require all employees to take a fitness for duty exam before returning to work.

228. Defendants required Maloche to take a fitness for duty exam because of the rumors about his mental health.

229. The fitness for duty exam caused Maloche emotional distress.

230. Defendants intended to cause Maloche emotional distress or knew that their acts or omissions would result in serious emotional distress to Maloche.

231. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

232. As a direct and proximate result of Defendants' acts and omissions as set forth above, Maloche has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

233. As a direct and proximate result of Defendants' conduct and the resulting emotional distress, Maloche has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Maloche respectfully requests that this Honorable Court grant the following relief:

16



(a) Issue a permanent injunction:

    (i)    Requiring NiSource to abolish discrimination, harassment, and retaliation;

    (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring NiSource to restore Maloche to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Maloche for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Maloche claims as allowable under law;

(f) An award of the taxable costs of this action; and

17



Franklin County Ohio Clerk of Courts of the Common Pleas- 2023 Feb 03 11:49 AM-22CV007944
0G252 - S15
Case: 2:23-cv-01476-MRB Doc #: 3 Filed: 07/28/23 Page: 18 of 18 PAGEID #: 79

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
SPITZ, THE EMPLOYEE'S LAW FIRM
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Timothy Maloche*

## JURY DEMAND

Plaintiff Maloche demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to Defendants' counsel via electronic mail:

Judson Stelter (OH 0084295)
Michael Best & Friedrich LLP
170 South Main Street, Suite 1000
Salt Lake City, UT 84101
jdstelter@michaelbest.com

*s/Trisha Breedlove*
Trisha M. Breedlove (0095852)

18

